N

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | : | |
| | : | |
| JANET L. JOHNSON, | : | Bankruptcy No. 05-40065JAD |
| | : | |
| Debtor. | : | Chapter 13 |
| | : | |
| | : | Doc. No. 94 |

## MEMORANDUM and ORDER OF COURT

Debtor Janet L. Johnson ("Debtor") filed her voluntary petition on October 15, 2005. Debtor has been represented by attorney Ronald L. Russell in this case.

The matter before the Court is the Chapter 13 Trustee's *Motion to Compel Debtor's Attorney to Appear and Explain his Failure to Move for an Amended Wage Attachment Order* (the "Motion to Compel"). This matter is a core proceeding over which this Court has jurisdiction pursuant to 28 U.S.C. §§ 157(b)(2)(A), (E), (M) and (O) and § 1334(b). This *Memorandum and Order of Court* constitutes the Court's findings of fact and conclusions of law pursuant to Fed.R.Bankr.P. 7052.

The Chapter 13 Trustee filed the Motion to Compel because the simple matter of attaching Debtor's wages to fund her Chapter 13 plan has inexplicably dogged this case from its inception. The history of this case reveals repeated requests and orders of court directed to Debtor's counsel to prepare and file a wage attachment motion - a routine pleading in Chapter 13 cases in this district -

and counsel's utter failure and/or refusal to do so.[1]

By way of background, the Debtor's Chapter 13 plan indicated that plan payments were to be made by income attachments in the amount of $923.45 per month, and such plan was confirmed in August of 2006. See Doc. ## 30, 42. Despite this provision in the confirmed plan, no motion to attach wages was filed.

In May of 2007, the Chapter 13 Trustee requested dismissal of the bankruptcy case due to material defaults in Debtor's plan payments. See Doc. #52. After a July 2007 conciliation conference was held, the case was not dismissed but instead the monthly plan payment was raised from $923.45 to $1085.00 to cure the plan arrearages. See Doc. # 59. Again, no wage attachment motion was filed to fund the increase in monthly plan payments.

At a continued hearing in January of 2008 on a motion for relief from stay filed by Wells Fargo Home Mortgage, Inc., the Debtor personally appeared and informed the Court that after the July 2007 conciliation conference, attorney Russell was to have filed a wage attachment motion within five days of that conciliation conference. He had not done so despite repeated requests by the Debtor. The Court was unable to ask attorney Russell about the matter directly since he failed to appear at the January 2008 hearing. The Court then issued an order directing the Debtor to file a wage attachment motion by February 4, 2008 and required counsel to appear at a continued hearing to be held February 13,

---

[1] Local Rule 3015-2 requires a motion for wage attachment in an amount sufficient to cover Chapter 13 plan payments when the plan is to be funded by the debtor's regular income. Local Form No. 11 provides a format to follow for preparing wage attachment motions.

2008 to explain his failure to file the requisite wage attachment motions. See Doc. #70.

As of the February 2008 continued hearing, a wage attachment motion still had not been filed. *Finally*, on February 26, 2008 a wage attachment motion was filed - but not by attorney Russell. With the voluntary assistance from counsel for Wells Fargo Home Mortgage, and with the Court's permission, a motion for wage attachment was prepared for the Debtor and signed by her *pro se*. See Doc. #75. An order granting the wage attachment was entered on February 27, 2008. See Doc. #77.

On October 9, 2008, the Chapter 13 Trustee filed another *Certificate of Default Requesting Dismissal of Case*. At the conciliation conference on the *Certificate of Default* held on January 15, 2009, it was determined that an increase in the monthly payments from $1,085.00 to $1,314.00 in Debtor's plan was needed. See Doc. #86. In order to implement the increased monthly amount, an amended wage attachment in a higher amount was necessary. Mr. Russell was to amend the wage attachment and, once again, he failed to file the motion.

As of May 2009, approximately four months after the conciliation conference at which Debtor's plan payment was increased to $1,314.00, no corresponding wage attachment modification had been filed.

On May 27, 2009, the Chapter 13 Trustee filed the subject *Motion to Compel Debtor's Attorney to Appear and Explain his Failure to Move for an Amended Wage Attachment Order* ("*Motion to Compel*"). See Doc. #94.

According to the motion, the Debtor contacted the Office of the Chapter 13 Trustee regarding the lack of an amended wage attachment in her case and shared email exchanges that had taken place with attorney Russell. The basis of the *Motion to Compel,* as reflected by the quotes from the email exchanges, is that attorney Russell attempted to extract additional fees from the Debtor to prepare the wage attachment motion. Because no additional fees were forthcoming from the Debtor, counsel refused to prepare and file the wage attachment motion.

At the hearing on the *Motion to Compel,* attorney Russell did not dispute that he had attempted to collect additional funds from the Debtor.[2] However, attorney Russell argued that he was only attempting to recover an expense incurred for formatting the motion for filing. Specifically, he stated that he allegedly was required to have a third party convert the file containing the wage attachment motion into a "PDF" format acceptable for filing with the Court's electronic filing system because he did not possess the necessary computer skills to accomplish the file conversion himself. The fee associated with converting his file to a "PDF" format was allegedly $20.00 and this was the only fee Mr. Russell claimed he was trying to recover from the Debtor, not additional fees for legal services rendered.

The Court finds attorney Russell's explanation unacceptable and suspect for a number of reasons. First, attorney Russell's own words refute his

---

[2] No written response to the motion was filed by the respondent, Ronald Russell, despite being given the opportunity to do so. See Doc. #95.

statements and arguments to the Court.

In an email dated March 19, 2009, the Debtor requested that attorney Russell prepare and file the wage attachment required by this Court. In a response e-mail dated April 29, 2009, Mr. Russell advised the Debtor: "you have not paid me for the work you asked me to do nor have you reimbursed me the expenses associated with that work. When you pay up I will finish the work." See *Motion to Compel,* ¶6. He later replies to the Debtor:

> "Dear Lady you came to me and said you would pay me to help you… You have refused to live up to your obligation. I am not being paid by the trustee… I…will not do the wage attachment until you pay. If you had paid as agreed this would never have been an issue."

Id.

Mr. Russell did not deny sending the above referenced emails. The language in the emails shows that Mr. Russell was undeniably attempting to collect more than a $20.00 expense for formatting a file.

Second, in order to electronically file pleadings in the Court's electronic case filing system, an authorized filer must meet certain system requirements. Those requirements include Adobe Acrobat 3.0 or higher to convert documents from word processing format to what is known as a "PDF" or portable document format. See http://www.pawb.uscourts.gov/cmecf.htm Before becoming an authorized filer in the Court's electronic filing system, an attorney must successfully complete a training course to obtain a login number and a password. The creation of PDF files is covered as part of the course and discussed and demonstrated in detail by

the Court's training staff. In addition, the Court website has an Online Attorney Training Manual which provides detailed step by step guidance as to how a PDF file may be created. Id. There is also a computer based training module available on the website that has an interactive virtual demonstration of the creation of PDF files. Id. Given these circumstances, the Court finds it hard to believe that Mr. Russell is not capable to convert documents to a PDF. Even if attorney Russell was incapable of converting the files - despite the training he already had completed and despite ready access to step by step directions provided by the Court - at a minimum any cost associated with file formatting should be treated as a cost of doing business and not be borne by his clients.

Third, attorney Russell's explanation does not make sense in light of the fact that he has filed other pleadings in this case which would also have required the conversion of a file to PDF format. For example, attorney Russell filed a: (1) *Motion for Approval* of purchase of a motor vehicle, see Doc. #44; (2) *Certificate of Service*, see Doc. #47; (3) *Affidavit*, see Doc. #56; (4) *Response to Relief from Stay*, see Doc. #65; and (5) *Declaration re Proof of Payment*, see Doc. #84. Did attorney Russell attempt to extract a fee from the Debtor for each of those filings?

Fourth, the history of this case suggests that counsel's failure to file a wage attachment motion was not premised on the recovery of a $20.00 fee from the Debtor. In fact, the failure of counsel for the Debtor to file the requisite motion to attach wages has existed from the commencement of the case. It is not associated only with the most recent change in plan payments that precipitated the motion

by the Chapter 13 Trustee.

Mr. Russell's apparent disregard for the bankruptcy process has not gone unnoticed by this Court in the past. Attorney Russell has been the subject of a proceeding in which this Court asked the Office of the United States Trustee to review the cases of Ronald Russell and prepare a Report and Recommendation. See Misc. No. 07-202. In that proceeding, the Court was concerned regarding the failure of attorney Russell to pay the filing fees and complete the necessary filings resulting in the dismissal of those cases. See Misc. No. 07-202, Doc. ## 1, 2.

Even if Mr. Russell's recovery of cost argument was meritorious, such action is impermissible. See e.g., In re Smith; Moore; Balsley; McMasters, Case Nos. 97-30009, 98-30052, 98-30129, 99-20307, 2000 WL 33712211 (Bankr. D. Idaho, July 27, 2000)(counsel for debtor required to disgorge "conversion fee" charged to and received directly from chapter 13 debtors where counsel would no longer be receiving fees through plan payments upon conversion of case).

The Court notes that a fee of $2,745.00 was agreed upon to represent the Debtor. See Doc. #6 (*Disclosure of Compensation of Attorney for Debtor (Rule 2016(b) Statement)*). The *2016(b) Statement* does not indicate that any additional fees or expenses could be collected beyond the agreed upon amount, and the Debtor has no legal obligation to pay any increased sum to Mr. Russell beyond said amounts.[3] Moreover, even if the Debtor had agreed to additional fees and/or

---

[3] The 2016(b) Statement was filed at the commencement of this case when is was it a Chapter 7. Debtor converted to a Chapter 13 case approximately two months after filing the Chapter 7 petition. However, the 2016(b) Statement was never amended to reflect any different fee arrangement.

costs, the filing of an appropriate fee application and court approval is required. See 11 U.S.C. §330; Fed. R. Bankr. P. 2016(a). No application for fees or expenses has been filed by attorney Russell.

The Court also notes that the Debtor's confirmed chapter 13 plan provided for counsel to be paid $1,950.00 though the plan (the balance of $2,745.00 fee minus $795.00 already received) at the rate of $81.25 per month. See Doc. #30.[4] A confirmed plan binds a debtor and each creditor. 11 U.S.C. §1327. Thus, absent appropriate application, counsel for the Debtor could not charge, and Debtor could not pay, unauthorized postconfirmation amounts contrary to the confirmed plan.

As a final matter, the Court notes that at the *Motion to Compel* hearing held July 1, 2009, attorney Russell exhibited a complete lack of contrition. Rather, he responded by acting incredulous and flabbergasted by the Debtor's refusal to pay him the requested additional sums. This approach by attorney Russell, combined with his tone exhibited toward the Debtor in the email exchanges, is of concern to this Court.

Given the foregoing, it appears Mr. Russell has willfully ignored both the orders of this Court and the fee allowance and disallowance process that is mandated by the Bankruptcy Code, the Bankruptcy Rules, and Local Rules of this Court. Sanctions are therefore appropriate. See Chambers v. NASCO, Inc., 501

---

[4] Unpaid fees owed are an administrative expense pursuant to 11 U.S.C. §503(b)(2) entitled to priority as provided by 11 U.S.C. §507(a)(2). Such claims are to be paid through the plan pursuant to 11 U.S.C. §1322(a)(2).

U.S. 32 (1991)(courts have inherent power to sanction lawyers that appear before them); In re Berg, 356 B.R. 378 (Bankr. E.D. Pa. 2006)(failure of counsel to follow fee process, in particular process mandated by 2016 of the Bankruptcy Rules, may result in counsel being required to disgorge fees improperly paid); In re All Cases of Musher, 387 B.R. 669, 675-680 (Bankr. W.D. Pa. 2008)(disgorgement could be proper even if failure to comply with rules resulted from negligence or inadvertence).

WHEREFORE, this **28th** day of **July, 2009**, the Court hereby **ORDERS, ADJUDGES** and **DECREES** as follows:

(1)   On or before **August 10, 2009**, attorney Russell SHALL file a Motion to Attach Wages to provide for Debtor Janet L. Johnson's monthly plan payments in the amount of $1,314.00 or such higher amount as may now be required to fund her Chapter 13 Plan.

(2)   By no later than **October 1, 2009**, attorney Russell is hereby ORDERED to DISGORGE and return to the Chapter 13 Trustee all fees and expenses received in connection with this bankruptcy case including the $795.00 retainer, the $998.00 received through the plan, and any other sums received from the Debtor to the date of this Order and file an affidavit of compliance with the Court by such date.

(3)   Failure to comply with this Order may result in the imposition of additional sanctions.

Date: July 28, 2009                           /s/ Jeffery A. Deller
                                              Jeffery A. Deller
                                              U.S. Bankruptcy Judge

Case Administrator to Mail to:

Ronald L. Russell, Esq.
Janet L. Johnson

Ronda J. Winnecour, Esq., Chapter 13 Trustee
Norma Hildenbrand, Esq., Office of the U.S. Trustee